IN RE Petition of ROBERT ADAIR.

(*December* 17, 1936.)

HARRINGTON and SPEAKMAN, J. J., sitting.

*Robert Adair* appeared in his own behalf.

*W. Thomas Knowles* for the Home Owners Loan Corporation, the purchaser.

Superior Court for New Castle County. *Levari Facias,* No. 52, November Term, 1936.

HARRINGTON, J., delivering the opinion of the Court:

Mr. Adair objects to the confirmation of the sale made by the Sheriff on two grounds:

1. Because an advertisement of such sale was not delivered to the Fosters, the defendants in the writ, or left at their usual place of abode, at least ten days before the day of sale, in accordance with the provisions of *Section* 4361 of the *Revised Code of* 1915.

2. Because notices of such sale were not advertised for two weeks previous to the date thereof in two newspapers published in New Castle County, also in accordance with the provisions of *Section* 4361 of the *Revised Code of* 1915.

The right to set aside a Sheriff's sale, though ordinarily within the sound discretion of the court, is primarily based on "that control or authority over its own process, which the court would exert in any other case, for the correction of abuses or the prevention of injury." *In re Seaford Hardware Co.,* 3 *W. W. Harr.* (33 *Del.*) 146, 132 *A.* 737, 738; *Miles v. Wilson,* 3 *Harr.* 382; *Woolley's Del. Pract.,* § 1108.

Petitions of that nature are based on "some defect or irregularity in the process or mode of conducting the sale, or for neglect of duty, or misconduct on the part of the Sheriff, or some other sufficient matter, * * *," whereby the

rights of parties to, or interested in the sale are, or may have been, prejudiced. *In re Seaford Hardware Co.*, 3 *W. W. Harr.* (33 *Del.*) 146, 132 *A.* 737; *Miles v. Wilson*, 3 *Harr.* 382; *Woolley's Del. Pract.*, §§ 1108, 1115, 1116.

*Section* 4361 of the *Revised Code* of 1915, among other things, provides:

"Public notice of the sale of lands and tenements under executon process, shall be given by advertisements posted, at least ten days before the day of sale, in ten of the most public places of the County where the premises are situated, setting forth the day, hour and place of sale, and what lands and tenements are to be sold, and where they lie; * * * a like advertisement shall be delivered at least ten days before the day of sale to the defendant, or left at his usual place of abode, if he have a known place of abode in the County. * * *

"Notice of such sale as aforesaid shall also be advertised for two weeks previous to the time of said sale in two newspapers of the county wherein the said property is situated to be selected by the Sheriff: Provided, that not more than three insertions per week shall be made in any one newspaper."

■■ The defendants in the writ are perhaps usually the owners of the property to be sold, and these and other provisions of the statute of a somewhat similar nature, but which we need not consider, are intended to give them, as well as the public, notice of the sale and of what property is to be sold. There may be some exceptions to the rule (see *In re Seaford Hardware Co.*, 3 *W. W. Harr.* [33 *Del.*] 146, 132 *A.* 737), but in most cases, where such provisions are not complied with, the court will assume that the injury or damage has resulted.

■ Applying these principles, the failure of the Sheriff to give the notices and to advertise the sale in the newspapers, as required by the statute, are perhaps among the most usual grounds on which sales are set aside. *Woolley's Del. Pract.*, §§ 1104, 1115, 1119, 1120, and cases cited; see, also, *In re Seaford Hardware Co.*, 3 *W. W. Harr.* (33 *Del.*) 146, 132 *A.* 737. But the application must be made by a person who is or at least could be injuriously

affected by the failure of the Sheriff to comply with his statutory duties.

██ Mr. Adair, the petitioner, concedes that he does not hold the legal title to the property sold by the Sheriff, but the undisputed evidence tends to show that since April of 1935 he has had an equitable interest in that property growing out of a contract to purchase it from the Fosters. That agreement was oral as no purchase price was agreed upon in the option clause in the least, but at the time of the sale he had paid, approximately, $425.00 to the Fosters on account of the purchase price of $500, orally agreed on. His rights could, therefore, be injuriously affected by the failure of the Sheriff to properly advertise the property sold in the newspapers, as is required by the statute; but under the facts of this case they certainly could not be affected by the failure of the Sheriff to deliver notices of the sale to the defendants in the writ, as it is admitted that an advertisement of the sale was seen by Mr. Adair on October 19th, 1936, which was more than ten days before it was made.

The Fosters had a vital interest in the amount of the purchase price, and if they had objected to the confirmation of the sale, the first objection would probably be fatal as the undisputed evidence shows that no advertisement of that sale was either delivered to them, or left at their usual place of abode, according to the provisions of the statute.

It is true that in *Hawthorne, et al, v. Sayers*, 2 *Marv.* 177, 42 *A.* 478, the court set aside a sale on a *Levari Facias* because the statutory notice of that sale had not been given to the mortgagor. It, also, appeared that the mortgagor had sold the property subject to the mortgage, and not only did not file objections to the confirmation of the Sheriff's sale, but, also, stated on the stand, while testifying as a witness, that he had no objections to its confirmation, as the sale price was sufficient to relieve him of the debt. In that case,

as in this, the grantee of the mortgagor had received a notice of the sale, but we think the case is unsound in principle and should not be followed.

■■ The second objection of Mr. Adair is, however, based on more substantial ground. It appears from the evidence that notices of the sale were published by the Sheriff for various periods in three newspapers of the county. On Thursday, October 15th, and Friday, October 30th, 1936, such notices were published in the Journal-Every Evening, a daily newspaper published in the City of Wilmington; on October 18th and October 25th, 1936, they were published in the Sunday Star, a weekly newspaper, also, published in the City of Wilmington, and issued on Sunday of each week; and on October 21st and October 28th, 1936, they were published in the Middletown Transcript, a weekly newspaper published in the Town of Middletown, New Castle County, and issued on Thursday of each week.

What the statute requires is that notices of the sale shall be "advertised for two weeks previous to the time of said sale in two newspapers of the County," where the property to be sold is located, with a proviso, however, that not "more than three insertions per week shall be made in any one newspaper."

That proviso is not important in this case, but the publication made, though in three newspapers of the county for various periods, were not in two newspapers of the county[1] for two weeks before the sale, as is provided by the statute.

It is not claimed that any of the papers in which advertisements of the sale were inserted were not newspapers

---

[1] There are no daily newspapers in Kent and Sussex Counties and in order to comply with the full statutory period of two weeks the advertisements are always inserted in two newspapers for three weekly issues.

within the proper meaning of that term (see *Cent. Dict.;* *Webst. New Inter. Dict.;* 46 *C. J.* 19), so we need not consider that question.

The clear purpose of the insertion of advertisements in such papers is to give public notice of the sale where it is most likely to promote bidding, but in view of what we have already said it is unnecessary for us to consider whether the Sheriff could possibly have performed his statutory duty by inserting an advertisement in a weekly newspaper published in Middletown, when the house and lot to be sold were situated in or near the City of Wilmington, where other newspapers, probably having a much larger circulation, are published.

The rule is made absolute, and the sale set aside.

